UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN RE:                                    )    Civil No. 3:12-cv-00754-GPC-DHB
                                          )
GEORGE T. KELLY and LORI                  )    Bankruptcy No. 3-10-bd-7050
SAVOY-KELLY,                              )
                                          )    **ORDER AFFIRMING**
        Debtors,                          )    **BANKRUPTCY DECISION**
                                          )
_____          )
                                          )
GEORGE KELLY, and LORI KELLY,             )
                                          )
        Appellants and Defendants,        )
                                          )
v.                                        )
                                          )
J.A.W. LAND & TRADING, LLC, a             )
California Limited Liability Company,     )
                                          )
        Appellee and Plaintiff.           )
_____          )


        Pending before the Court is Appellants George T. Kelly and Lori Savoy-Kelly's (collectively, "Kellys") appeal of the Bankruptcy Court for the Southern District of California's ("Bankruptcy Court") decision regarding the nondischargeability of the promissory note and subsequent March 24, 2009 modification between the Kellys and J.A.W. Land & Trading, LLC ("JAW").  The Court finds this appeal suitable for disposition without oral argument.  See Civ. L.R. 7.1d.1.  For the following reasons, the Court **AFFIRMS** the Bankruptcy Court's decision.

/ / /

## I.     BACKGROUND[1]

This appeal arises from JAW's action to except its claim against the Kellys from discharge in their Chapter 7 Bankruptcy proceeding pursuant to 11 U.S.C. § 523(a)(2)(A).  The debt arises from a loan made by JAW to the Kellys, whereby JAW claimed, and the Bankruptcy Court determined, that the amount owed under the debt is $652,337.96 (the principal amount of $420,597.13 plus interest and bonus payments) and arose pursuant to a $520,000 Installment Note dated September 29, 2008, (ROA, Dkt No. 5-1 at 20; ROA, Dkt No. 5-2 at 6; "Note"), and a March 2009 Modification to that Installment Note. (ROA, Dkt No. 5-1 at 24; ROA, Dkt No. 5-3 at 69; "Modification.")

### A.     Promissory Notes Secured by Deeds of Trust

The Kellys obtained the Note after approaching Richard Gillette ("Gillette"), a licensed real estate broker for Heller Crouse & Company, Inc., (Dkt No. 71 at 14:6-18), who acted as a dual agent between the Kellys and JAW, about obtaining a loan in order to assist in paying their mortgages and other expenses while they attempted to sell some of their high-end properties on Highland Drive.  (Dkt No. 80 at 7:5-9.)  Gillette orchestrated at least two other loans from JAW to the Kellys: the first, executed on February 23, 2008, for $200,000 and secured by a second deed of trust on 740-756 S. Escondido Boulevard, Escondido, California, 92025 ("Church Property"), (ROA, Dkt No. 5-2 at 2; Dkt No. 80 at 6:10-14; see also Dkt No. 71 at 20:14-25, 21:1-25, 22: 1-25), and the second, executed on June 30, 2008, for $225,000 and secured by a second

---

[1]Reference to the Record on Appeal will be designated as "ROA," followed by the docket number and the appropriate Electronic Case Filing page number.  Because Appellants designated only the lower court's docket number of the hearing transcripts it sought to include within its record, which prevented the transcripts from having an Electronic Case Filing page number within the docket of this Court, and because Appellee designated additional items to be included in the record on appeal in the lower court's docket rather than this Court's docket, for ease of reference, any docket number not preceded by "ROA" refers to the docket number in the adversary proceeding in the Bankruptcy Court, Adv. Pro. No. 10-90365-LA.  Further, the Court notes that Appellants' failure to provide and pay for transcripts after having designated such transcripts as part of the record violates Fed. R. Bankr. P. 8006.

deed of trust on 1350 S. Escondido Boulevard, Escondido, California, 92025 ("Palms Property"),   (ROA, Dkt No. 5-2 at 4; Dkt No. 80 at 6:10-14; Dkt No. 71 at 19:15-25, 20:1-13).

JAW, through its principal, Jim Williams ("Williams"), agreed to loan the Kellys $520,000 in an arrangement whereby JAW advanced an initial installment of $147,500 at the close of the loan escrow, dated September 24, 2008, (See ROA, Dkt No. 5-3 at 38-52; "Loan Escrow Instr."), and would subsequently advance $30,000 per month, each month, from November 1, 2008 through October of 2009.  (See Dkt No. 80 at 4:2-7.)  As consideration for the loan, the Rider to the Note promised JAW a minimum of $100,000 from the sale of two of the properties used to secure the Note, located at 840 and 850 Highland Drive in Solana Beach, in addition to the principal and interest referenced in the Note.  (ROA, Dkt No. 5-1 at 21-22; see also ROA, Dkt No. 5-2 at 12-15; the "Rider.") The Loan Escrow Instructions directed the Kellys to execute several deeds of trust to secure the loan.  (See Loan Escrow Instr.)

The Note was secured by seven deeds of trust in junior positions to senior loans on the seven separate properties owned by the Kellys, which included their properties on Highland Drive.  (Note; see also ROA, Dkt No. 5-2 at 16-35.)  JAW believed the properties had a collective fair market value over and above the amount of the senior liens on the properties sufficient to secure repayment of the loan.  (Dkt No. 80 at 4:7-11.)  Further, the Note provided for an annual interest rate of 10% per annum, commencing on the date JAW made each advance.  It also provided, upon filing a notice of default, that the interest rate would increase to 20% per annum without notice. (Note.)

| Principal Advanced from JAW to the Kellys[2] | | |
|---|---|---|
| **Payment** | **Payment Date** | **Amount Paid to Appellants** |
| 1 | **September 29, 2008** | $147,500.00 |
| 2 | **October 21, 2008** | $30,000.00 |

[2] ROA, Dkt No. 5-1 at 14:3-11.

| 3 | **November 17, 2008** | $30,000.00 |
| 4 | **December 15, 2008** | $30,000.00 |
| 5 | **January 22, 2009** | $30,000.00 |
| 6 | **February 26, 2009** | $30,000.00 |
| 7 | **March 2009** | $30,000.00 |
| **TOTAL:** | | **$327,500** |

On January 6, 2009, 850 Highland Drive sold for $1,650,000.00, with the net proceeds amounting to $37,438.41, (ROA, Dkt No. 5-3 at 30-31), 100% of which went to JAW pursuant to the Rider, in exchange for JAW releasing its deed of trust on that property. (Rider.) However, because the property sold for far less than anticipated, Williams became concerned about JAW's exposure under the Note. (Dkt No. 71 at 73:15-24.)

**B.   Modification to Promissory Note**

After the disappointing sale of 850 Highland Drive and the decline in the real estate market in late 2008 to early 2009, Williams approached Gillette, (Dkt No. 71 at 14:6-18), to discuss modifying the Note, (id. at 73:15-24.)

Pursuant to the Modification, JAW agreed to advance one more $30,000 installment to the Kellys but would be relieved of all requirements to advance any further payments under the Note, and any future advances would be at the sole and absolute discretion of JAW. (ROA, Dkt No. 5-1 at 24; see also ROA, Dkt No. 5-3 at 69.) In exchange for this final payment, the Kellys agreed to alter the release prices for the remaining properties securing the Note (the Palms Property, the Church Property, and 1208-1218 S. Escondido Boulevard, Escondido, California (the "Boulevard Property")), allowing JAW to receive 100% of the net proceeds after payment of the senior loans on the properties. The Kellys further promised to keep "all senior debt on the aforementioned properties current at all times." (Id.)

On March 24, 2009, Appellants signed the Modification to the Note. Unfortunately, Appellants were unable to repay both the senior and junior loans. (Dkt No. 80 at 4:12-15.) Appellants breached the Note and deeds of trust by, *inter alia*, failing to pay property taxes and failing to keep the senior debts current as promised.

(Dkt No. 68 at 16-17, ¶¶ 15, 16, 19.)   As a result, pursuant to the Note, Rider, Modification, Loan Escrow Instructions, and remaining deeds of trust, JAW declared the full amount remaining due on the Note immediately due and payable.  (Dkt No. 68 at 17, ¶ 20.)

### C.   <u>Foreclosure Proceedings</u>

In April 2009, JAW advanced $14,982.00 in addition to what it had already loaned the Kellys to cover foreclosure costs and begin foreclosing on the six remaining properties securing the Note and the Modification.   (Dkt No. 71 at 94:7-16.) Accordingly, JAW foreclosed on the Church Property, (Dkt No. 73 at 87:10-13; 88:3-10), through its second position deed of trust securing the February 2008 loan for $200,000, and on the Palms Property, through its second position deed of trust securing its June 2008 loan for $225,000. (Dkt No. 73 at 107:20.)  JAW's foreclosure on these properties extinguished any remaining equity available to repay the amount owed JAW under the Note secured by its third position deeds of trust on those properties.  (<u>Id.</u> at 109:12 - 110:9.)

In June 2009, JAW advanced $49,000 to keep the loans current on the remaining properties the Kellys had promised to keep current pursuant to the Modification, and, in February 2010, JAW advanced another $2,000 for the same reason.  (Dkt No. 71 at 94:17-25.)  Appellants also closed a short sale on 2816 Highland Drive, Carlsbad, California, resulting in a bonus payment of $10,000 to JAW under the Note in exchange for JAW releasing its deed of trust on that property.  (<u>Id.</u> at 95:16-25; 96:1-2.)

On July 29, 2009, 840 Highland Drive sold at a short sale, resulting in a $25,000 bonus payment to JAW outside of escrow and pursuant to the Rider in exchange for JAW releasing its deed of trust on that property.  (Dkt No. 71 at 96:3-12; Dkt No. 73 at 55:6-56:10; ROA, Dkt No. 5-1 at 14.)  However, after applying the bonus payments received by JAW from the sale of 840 and 850 Highland Drive in addition to the $10,000 bonus payment from the sale of 2816 Highland Drive, the Kellys still owed

JAW a remaining $27,631.59 under the Rider, no portion of which has been paid to JAW.  (Dkt No. 68 at 15.)

Senior lender Pacific Trust foreclosed on 19371 4th Place, Escondido, California ("4th Place" or the "Duplex"), (Dkt No. 73 at 106:18-24; 107:11-17), and senior lender Mr. Kovalsky foreclosed on the Boulevard Property.  Both foreclosures extinguished any remaining equity available to repay JAW under its junior deed of trust.  (Id. at 107:5-10.)

| Property Sales and Foreclosures | | |
|---|---|---|
| **Property** | **Result** | **Payment to JAW Under Note, Modification, & Rider for Sale of Properties** |
| **1350 S. Escondido Blvd., Escondido, CA** ("Palms Property") | Foreclosure by JAW through second position deed of trust securing its 2008 loan. | $0.00 (Security wiped out.) |
| **740 – 756 S Escondido Blvd., Escondido, CA** ("Church Property") | Foreclosure by JAW through second position deed of trust securing its 2008 loan. | $0.00 (Security wiped out.) |
| **1208-1218 S. Escondido Blvd., Escondido, CA** ("Boulevard Property") | Foreclosure by Mr. Kovalsky through his second position deed of trust. | $0.00 (Security wiped out.) |
| **19371 4th Place, Escondido, CA** (Duplex/4th Place) | Foreclosure by Pacific Trust Bank through first position deed of trust. | $0.00 (Security wiped out.) |
| **2816 Highland Drive, Carlsbad, CA** | Short sale by Kellys. | $10,000 bonus payment to JAW pursuant to Rider. |
| **840 Highland Drive, Solana Beach, CA** | Short sale by Indy Mac and Pacific Trust. | $25,000 bonus payment to JAW pursuant to Rider. |
| **850 Highland Drive, Solana Beach, CA** | Sold in January 2009. | $37,438.41 bonus payment to JAW pursuant to Rider. |
| **TOTAL:** | | **$72,368.41** |

/ / /

/ / /

6

### D.   **Bankruptcy Court Decision**

JAW filed an adversary proceeding in the Bankruptcy Court against the Kellys for a determination that the debt the Kellys owed JAW was nondischargeable in their Chapter 7 proceeding and to obtain a judgment in the amount of the debt owed.

After a three-day trial, the Bankruptcy Court concluded: (1) JAW made a loan of $420,597.13 to the Kellys, which was disbursed through an initial installment in September of 2008, and then in subsequent monthly installments, (Dkt No. 80 at 4:2-7); and (2) the debt the Kellys owed JAW was nondischargeable under § 523(a)(2)(A) because the Kellys had procured the loan from JAW through fraud in the form of misrepresentations and concealment. (Id. at 4:7-11.)

The Bankruptcy Court found most of the alleged misstatements or omissions of fact were not chargeable to the Kellys, subject to a few exceptions. (Dkt No. 80 at 7:2-3.) One such exception was a finding that Mr. Kelly failed to disclose construction work on at least three of the properties (the Palms Property, the Boulevard Property, and the Duplex Property). (Id. at 14:22-25-15:1-3.) With respect to this conclusion, the Court found the evidence relevant to whether Mr. Kelly knew or should have known he needed a permit for construction of the Palms Property to be inconclusive. (Id. at 15:9-15.) But, with respect to the Boulevard and Fourth Place properties, the Bankruptcy Court concluded Mr. Kelly knew or should have known he needed a permit or that one might have been required, and that there was no evidence he disclosed that to Gillette or Williams. (Id. at 16:5-14.) The Bankruptcy Court also concluded that, in signing the Modification, the Kellys recklessly disregarded their inability to keep the senior loans on the properties current. (Id. at 17:4-9; 18:12-16.)

/ / /

/ / /

/ / /

/ / /

/ / /

The Bankruptcy Court determined the amount of the debt to be, and entered judgment in favor of JAW in the amount of, $652,327.96, plus interest accruing at the federal judgment rate from the date of February 6, 2012, as well as attorneys fees in an amount to be determined by the Court.  (DOA,[3] Dkt No. 4-1, Ex. 1.)  The Bankruptcy Court further concluded the judgment was nondischargeable in the Kellys' Chapter 7 bankruptcy under 11 U.S.C. § 523(a)(2)(A).

On appeal, the Kellys argue the Bankruptcy Court's findings and conclusions were clearly erroneous, and that this Court should reverse the Bankruptcy Court's decision by concluding that their debt is dischargeable in their bankruptcy proceeding. (DOA, Dkt No. 6, "Appellants' Opening Br.")   Conversely, JAW contends the Bankruptcy Court's findings were not clearly erroneous because they were supported by substantial evidence within the record; thus, this Court should affirm the judgment of the Bankruptcy Court, both on the grounds provided in the record, as well as other grounds.  (DOA, Dkt No. 7, "Appellee's Responsive Br.")

## II.     STANDARD OF REVIEW

A district court has jurisdiction to hear bankruptcy appeals.  28 U.S.C. §§ 158(a)(3) and 1334. "On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.  When considering a bankruptcy appeal, a district court uses the same standard of review a circuit court would use in reviewing the decision of a district court.  See In re Baroff, 105 F.3d 439, 441 (9th Cir. 1997); see also Stern v. Marshall, 131 S. Ct. 2594, 2611 (2011) reh'g denied, 132 S. Ct. 56 (U.S. 2011) ("...the district courts review the judgments of bankruptcy courts in core proceedings only under the usual limited appellate standards").

/ / /

---

[3] "DOA" refers to the Docket on Appeal and references the documents outside of the designated record but filed within the Docket of this Court.  Such references will be followed by the appropriate docket number and Electronic Case Filing page number.

### A.   Findings of Fact

A trial court's determination of whether certain misrepresentations "were material under the circumstances, whether there was reasonable reliance, and whether there was intent to deceive" are findings of fact. In re Lansford, 822 F.2d 902, 904 (9th Cir. 1987); In re Rubin, 875 F.2d 755, 758 (9th Cir. 1989) ("[A] finding of intent to defraud a creditor is a finding of fact" ).  A district court reviews a bankruptcy court's findings of fact for clear error.  In re Int'l Fibercom, Inc., 503 F.3d 933, 940 (9th Cir. 2007); see also, Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses").  A factual finding is clearly erroneous if, after examining the evidence, the reviewing court is "left with the definite and firm conviction that a mistake has been committed."  Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985).

### B.   Conclusions of Law

District courts review a bankruptcy court's conclusions of law *de novo*.  In re Int'l Fibercom, Inc., 503 F.3d at 940.  A bankruptcy court's decision regarding whether a plaintiff has stated a cause of action under § 523(a)(2)(A) 523 is a question of law, which the district court reviews de novo.  See In re Apte, 180 B.R. 223, 227 (B.A.P. 9th Cir. 1996) aff'd, 96 F.3d 1319 (9th Cir. 1996).  Thus, when determining whether a debt  for money obtained by a debtor under false pretenses, false representation, or fraud is nondischargeable under § 523(a)(2)(A) courts utilize de novo review.  In re Tsurukawa, 258 B.R. 192, 195 (B.A.P. 9th Cir. 2001); but see Apte, 180 B.R. at 228, n.2 (because determining whether reliance is justifiable requires courts to refer to "the 'data of practical human experience'" in their determinations, a trial court's factual findings effectively determine a reviewing court's legal conclusions, "thus making the issue of justifiable reliance a mixed question of fact and law").

/ / /

/ / /

### III.    ISSUES ON APPEAL

The Kellys appeal the Bankruptcy Court's determination that JAW proved its § 523(a)(2)(A) claim for credit obtained by false pretenses, false representation, or actual fraud with respect to two of its adverse findings which supported the decision that the debt was nondischargeable.  They argue the Bankruptcy Court erred in concluding that: (1) the $30,000 payment under the March 2009 Modification was obtained by fraud because the Kellys recklessly disregarded their inability to keep the senior loans current, and (2) the Kellys concealed construction work performed without permits on two of the security properties, which occurred on or before the original loan was made.  (Dkt No. 80 at 27:10-16.)

With respect to the first adverse ruling, the Kellys argue the obligation arising under the Modification is dischargeable in their bankruptcy proceeding for three principal reasons.  First, the Modification lacked consideration because JAW already owed the $30,000 under the original Note.  Second, the Kellys argue they were under economic duress due to Williams' threat to rescind on the original Note, and, as a result, the Modification is invalid or voidable for want of mutual assent.  Third, the Kellys assert JAW did not justifiably rely on the three specified senior loans being kept current because its agent, Gillette, knew of the maturity of the Kovalsky loan on the Boulevard Property.  Accordingly, the Kellys argue this Court should find the obligation arising under the Modification dischargeable in their Chapter 7 proceeding.

JAW, on the other hand, argues: (1) The Kellys' argument that a lack of consideration invalidated the Modification is without merit; (2) the Kellys' claim of economic duress fails to insulate them from fraud; and (3) the Kelly's argument that there was no justifiable reliance because of the status of the Kovalsky senior loan lacks merit as well.

With respect to the second adverse ruling, the Kellys argue the Bankruptcy Court's finding that they concealed construction work performed without requisite permits on two of the properties used as collateral for the loan (the Boulevard Property

and the Duplex) was clearly erroneous.  First, they argue the record lacks evidence to support the Bankruptcy Court's inclusion of Ms. Kelly in its determination of nondischargability arising out of its concealment determination.  The Kellys further argue that the Bankruptcy Court's determination regarding the Boulevard Property is not supported by the evidence because the permit issue: (1) was no longer an issue when the parties entered into the agreement; (2) caused no actual loss or damage; and (3) precluded a finding of fraud because justifiable reliance cannot be found due to the evidence regarding Gillette's determinations of value, loan ratios, and existing liens.

Next, the Kellys argue the record fails to support the nondischargeability determination as it relates to the Duplex because: (1) JAW failed to satisfy its burden of proof as to permit requirements for the property; (2) JAW failed to establish it suffered any loss or damage as a result of the nondisclosure concerning the permits at the Duplex; and (3) the Bankruptcy Court's findings and evidence regarding Gillette's determination of values, loan ratios, and existing liens precluded any finding of justifiable reliance.

JAW argues the Bankruptcy Court's determination that the Kellys concealed construction performed without permits on two of the properties securing the loan was not clearly erroneous, and that the record supports inclusion of Ms. Kelly in the nondischargability determination.  JAW further argues that the Kellys' position regarding the need for a permit at the Duplex is not supported by the evidence.  Additionally, JAW refutes the Kellys' contention that JAW did not meet its burden of proof for establishing damages.  JAW also argues that, not only should the Bankruptcy Court's determination be affirmed based upon the grounds upon which it was based, but it should also be affirmed because the Kellys misrepresented that they would keep their senior loans current in order to obtain the original loan.

/ / /

/ / /

/ / /

12-CV-00754

## IV.      DISCUSSION

Appellants argue it was clear error for the Bankruptcy Court to conclude that the debt owed to JAW should be nondischargeable because Appellants: (1) obtained the $30,000 payment from JAW pursuant to the Modification by fraud, and (2) concealed work done without permits on the Boulevard and Duplex properties. (Appellants' Opening Br. at 13.)

Section 523(a)(2)(A) of the Bankruptcy Code prevents debtors from discharging in bankruptcy any obligation "for money, property, services, or an extension, renewal, or refinancing of credit," to the extent a debtor incurred such an obligation by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). To demonstrate whether a debt qualifies as nondischargeable under § 523(a)(2)(A), a creditor must prove five elements by a preponderance of the evidence: (1) the debtor made certain representations, (2) with knowledge of the falsity of those representations and (3) the intent and purpose of deceiving the creditor, (4) on which the creditor relied, and (5) as a proximate result of those misrepresentations, the creditor sustained damages or loss. In re Sabban, 600 F.3d 1219, 1222 (9th Cir. 2010); accord In re Kennedy, 108 F.3d 1015, 1018 (9th Cir. 1997) (citing In re Britton, 950 F.2d 602, 604 (9th Cir.1991)).

In the present case, the Bankruptcy Court concluded that JAW established that:

**(1)** The Kellys' failure to disclose the construction done without permits on two of the seven secured properties, and the Kellys' reckless disregard of their financial situation when promising to keep their senior loans current as a condition of the last $30,000 advance from JAW, constituted **false statements** or **omissions of fact**. (Dkt No. 80 at 18:20-25 - 19:1-3.)

**(2)** Mr. Kelly had **knowledge** of the falsity of the misrepresentations or omissions of fact at the time he made them. (Id. at 19:4-6, 16-24.)

**(3)** The Kellys **intended to deceive** JAW, by failing to disclose that at least two of the properties had undergone renovations without the required permits. (Id. at 20:2-7, 16-24.)

**(4)** Mr. Kelly's profession, in addition to the Kellys' and JAW's previous business dealings, had generated a relationship of trust and demonstrated that JAW justifiably relied on the Kellys' misrepresentations.  (Id. at 21:5-16.)

**(5)** JAW's damages were **proximately caused** by the Kellys' omissions of fact, (id. at 24:16-18), because a major factor contributing to JAW's losses was the Kellys' failure to disclose (id. at 23:20 - 25-24:1), and had JAW known the truth, it would have been unlikely to make the loan.  (Id. at 24:9-13.)

The Bankruptcy Court's findings were supported by substantial evidence and were not clearly erroneous.

**A.**  **The Bankruptcy Court's Conclusion That the March 2009 Modification Was Nondischargeable Under 11 U.S.C. § 523(a)(2)(A) Was Not Clear Error.**

Among other things, the Kellys argue the Bankruptcy Court's finding that the Modification was nondischargeable was clearly erroneous because it lacked consideration and mutual assent, and as a result, did not constitute a valid contract. JAW contends the Modification was supported by consideration, but that the Kellys obtained the Modification through fraud because it was based on the Kellys' false promise to keep their senior loans current.  The Bankruptcy Court ultimately agreed with JAW, concluding that the Kellys recklessly disregarded their inability to keep their senior loans current after promising to do so.  (Dkt No. 80 at 27:10-16.)

A valid and enforceable contract requires: (1) parties capable of contracting; (2) consent; (3) a lawful object; and (4) sufficient consideration." Cal. Civ.Code § 1550; Ersa Grae Corp. v. Fluor Corp., 1 Cal.App.4th 613, 623 (1991); see also Duncan v. Wells Fargo Home Mortg., Inc., 487 Fed.Appx. 427 (9th Cir. 2012) ("Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration"); Restatement (Second) of Contracts § 17 (1981).

The Court agrees with JAW that the Bankruptcy Court's finding concerning the March 2009 Modification was not clearly erroneous because it was supported by substantial evidence in the record.  Accordingly, the Court affirms the Bankruptcy

1    Court's conclusion that the obligation arising out of the Modification is
2    nondischargeable in Appellants' bankruptcy proceeding.

3              1.      *Consideration*

4          The Kellys failed to raise the issue of consideration during the trial before the
5    Bankruptcy Court and are not entitled to "a second bite at the . . . apple." Christian
6    Legal Soc. Chapter of Univ. of California v. Wu, 626 F.3d 483, 488 (9th Cir. 2010).
7    Because the adjudication as to the dischargeability of particular debts qualifies as a
8    core proceeding, 28 U.S.C. §157(b)(2)(I), all of the Kellys' claims (arising under title
9    11) should have been brought before the bankruptcy judge handling their bankruptcy.
10   Meeks v. Nat'l Educ. Corp., 28 F.3d 107, 2, n.1 (9th Cir. 1994) (citing General Order
11   312-D for the United States District Court for the Southern District of California as
12   "referring 'to the bankruptcy judges of this district all cases under title 11, and all
13   proceedings arising under title 11 or arising in or related to cases under title 11'").
14   Thus, "[t]o the extent that defendants attempt now to raise new arguments . . . , those
15   matters could have and should have been raised" in the proceeding below, Jules Jordan
16   Video, Inc. v. 144942 Canada, Inc., 468 F. App'x 676, 677-78 (9th Cir. 2012) cert.
17   denied, 133 S. Ct. 133 (2012), and this Court lacks subject-matter jurisdiction to
18   determine such issues on appeal.  Because the Kellys failed to raise their consideration
19   argument in the proceeding below, it is waived. Id.; see also In re Jan Weilert RV, Inc.,
20   315 F.3d 1192, 1199, amended, 326 F.3d 1028 (9th Cir. 2003) (affirming the
21   bankruptcy court's conclusion and declining to consider issues not raised in the
22   bankruptcy court because "[a]bsent exceptional circumstances, this court generally will
23   not consider arguments raised for the first time on appeal"); In re Am. W. Airlines, Inc.,
24   217 F.3d 1161, 1165 (9th Cir. 2000) ("Absent exceptional circumstances, we generally
25   will not consider arguments raised for the first time on appeal, although we have
26   discretion to do so").
27   / / /
28   / / /

14

In the present case, the Court finds none of the exceptions to the general rule that the court will not consider an issue raised for the first time on appeal apply.  Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006).[4]

### 2. *Economic Duress*

The Kellys likewise failed to address the issue of economic duress in their bankruptcy proceeding and cannot raise the issue for the first time on appeal where none of the exceptions to the general waiver rule apply.[5, 6]

### 3. *Justifiable Reliance*

The Kellys also argue that JAW could not have justifiably relied on their promise to keep the senior loans current pursuant to the Modification because JAW knew that one of the senior loans, the Kovalsky loan, was past maturity, and that this fact precluded JAW from being able to rely on the Kellys' promise.  (Appellee's Responsive Brief at 19.)  JAW argues in response that knowledge that another loan has matured does not equate to an inability to rely on the Kellys' promise to keep all senior loans current.  (Id.)  The Court finds the record supports the Bankruptcy Court's finding of justifiable reliance on Appellants' promise to keep their senior loans current under the Modification.

For purposes of nondischargeability, "[t]he reliance by the creditor must have

---

[4] Further, the Court finds that even if the Kellys had not waived the issue of consideration, the Kellys' argument lacks merit.  See e.g., Cal. Civ. Code §§1541, 1624 (a)(7), 1698(a); Rogers v. Kimball, 121 Cal. 247, 253 (1898); Gardner v. Shreve, 89 Cal. App. 2d 804, 805-06 (1949); Lawrence R. Ahern; *11 West's Legal Forms, Debtor & Creditor Non-Bankruptcy § 29:1* (Rev. 3d ed. 2013).

[5] Jules Jordan Video, Inc., 468 F. App'x at 677-78; accord Shuey, 480 F. App'x at 440; Christian Legal Soc. Chapter of Univ. of California, 626 F.3d at 488; Greger, 464 F.3d at 973; In re Jan Weilert RV, Inc., 315 F.3d at 1199; In re Am. W. Airlines, Inc., 217 F.3d at 1165; Meeks, 28 F.3d 107, 2, n.1.

[6] Moreover, the Court finds that even if the Kellys had not waived the issue of economic duress, the Kellys' argument lacks merit.  CrossTalk Productions, Inc. v. Jacobson, 65 Cal.App.4th 631, 644-45 (1998); London Homes, Inc. v. Korn, 234 Cal. App. 2d 233, 234-42 (1965); In re Boydston, 520 F.2d 1098, 1101 (5th Cir.1975); see also17 California Jurisprudence 2d, Duress, etc., section 7, pages 78-79) ("...is not duress . . . to threaten nonperformance of a contract").  Further, the Court has found no cases–and the Kellys cite to none–holding that duress constitutes a defense to fraud.

been actual and justifiable." (Dkt No. 80 at 20:17-23)  A court determines whether a creditor justifiably relied upon a debtor's representations by considering "all of the circumstances surrounding the particular transaction, and must particularly consider the subjective effect of those circumstances upon the creditor." In re Evans, 181 B.R. 508, 514 (Bankr. S.D. Cal. 1995) (citing In re Kirsh, 973 F.2d 1454, 1458, 1460 (9th Cir.1992)); accord Field v. Mans, 516 U.S. 59, 61 (1995); Genel Co. v. Bowen (In re Bowen), 198 B.R. 551, 555 (B.A.P. 9th Cir. 1996).

The Court finds the record contains substantial evidence to support the Bankruptcy Court's conclusion that JAW justifiably relied on the Kellys' promise to keep their senior loans current.  First, the record contains sufficient evidence to show that even though the Kovalsky loan was past maturity, the lender had agreed to accept monthly interest-only payments from the Kellys.  (Dkt No. 71 at 115:6-5.)  Second, Gillette told JAW that the Kellys could continue making payments on the Kovalsky loan and that the lender would not call the loan due. (Dkt No. 73 at 123:22-124:5; Dkt No. 80 at 21:9-16.)

Accordingly, the Bankruptcy Court's ruling that JAW justifiably relied on the Kellys' promise to keep the senior loans, including the Kovalsky loan, current, was not clearly erroneous.

## B. **The Bankruptcy Court's Determination That Appellants Concealed Work Done Without Permits Was Not Clear Error.**

First, the record demonstrates Mr. Kelly renovated three of his properties: the Palms Property, the Boulevard Property, and the Duplex.  Second, the record demonstrates this work required permits.  Third, the record shows the Kellys never disclosed to JAW the work performed on the three properties without the required permits.  Finally, the record shows that, had JAW known this, it would not have entered into the loan.

In determining whether a creditor has proven justifiable reliance upon the representations of a debtor, courts must examine "all of the circumstances surrounding

the particular transaction," including referring to a "subjective standard which takes into account the knowledge and relationship of the parties." In re Evans, 181 B.R. 508, 514 (Bankr. S.D. Cal. 1995) (citing In re Kirsch, 973 F.2d at 1454). However, where a creditor argues that a debt is nondischargeable under § 523(a)(2)(A) because the debtor committed fraud by intentionally failing to disclose material facts, the creditor must prove "that the debtor concealed facts and that the facts concealed were material." Id. at 514-15 ("[S]ilence, or the concealment of a material fact, can be the basis of a false impression which creates a misrepresentation under § 523(a)(2)(A)"); accord In re Howarter, 114 B.R. 682, 684-85 n.2 (9th Cir. 1990). The concealment "must be sufficiently material to have caused the plaintiff to act in a manner that he would not have done had he known the truth." In re Dunston, 146 B.R. 269, 275 (D. Colo.1992). If "a reasonable . . . [investor] would attach importance to the alleged omissions in determining his course of action," such concealed facts qualify as material. In re Evans, 181 B.R. at 515 (citing In re Harris, 458 F. Supp. 238, 242 (D. Or. 1976), aff'd 587 F.2d 451 (9th Cir.1978), cert. denied, 442 U.S. 918 (1979). Thus, in a concealment action, "[m]ateriality rather than reliance becomes the decisive element of causation" because it would be impossible to analyze justifiable reliance as "it is not possible to rely on facts which have been concealed." Id. at 515, n.7 (citing Titan Group, Inc. v. Faggen, 513 F.2d 234, 239 (2nd Cir.1975)).

In Evans, the court determined that a Chapter 7 debtor who withheld certain facts relating to the lot he used as security for a loan had withheld material facts, which the creditor would have found important in deciding whether or not to advance the loan, and that the debtor intentionally concealed and misled the creditor. 181 B.R. at 515. Among other things, the debtor failed to inform the creditor that the lot used as security for the loan was not buildable in its present state; the debtor's applications to the city for a variance had been denied; and any plans to build on the lot would require costly proceedings before the planning commission. Id. As a result, noting the fact that the debtor and creditor were good friends (who even frequently played golf together), the court easily found justifiable reliance in determining the debtor's failure to disclose

material facts to the creditor constituted an actionable fraud under § 523(a)(2)(A).  Id. at 514-15.

Like the debtor in Evans, the Kellys similarly failed to inform JAW that the Boulevard Property was not buildable in its present state and needed to be rezoned. While both Williams and Gillette knew Mr. Kelly had performed work on the security properties prior to the September 2008 loan, (Dkt No. 71 at 58:18-24, 60:15-18; Dkt No. 73 at 96:15-29), neither of them knew that the work done on the properties had been done without permits or in violation of local building codes. (Dkt No. 71 at 59:3-18, 60:4-7; Dkt No. 73 at 96:20-25 - 97:1-6.)  Further, like the creditor in Evans who partially based his reliance on the debtor's representations due to their existing friendship, Williams and Mr. Kelly also had a pre-existing relationship as social acquaintances, friends, and business partners.  (Dkt No. 73 at 85:17-25.)  Mr. Kelly had even previously performed construction work for Mr. Williams.  (Id.)  Moreover, the fact that Gillette and Williams both knew Mr. Kelly was in the business of improving properties as a licensed contractor, (Dkt No. 71 at 60:8-11; Dkt No. 73 at 94:17-25), while Williams had no expertise in construction, (Dkt No. 73 at 84:6-25-85:1-10), further supports the Bankruptcy Court's finding of justifiable reliance. Williams testified that if, in September 2008, Williams had known of Mr. Kelly's work on the properties without the required permits, it would have affected Williams' decision to make the loan.  (Id. at 97:3-16.)  Because such knowledge would have damaged Mr. Kelly's credibility with Williams as well as jeopardized the security by making it more difficult to get subsequent loans on the properties, (id.), Williams would not have made the loans.  (Id. at 98:5-9.)

The Kellys' concealment clearly satisfied the elements of a § 523(a)(2)(A) action, and the record contains substantial evidence to support the Bankruptcy Court's determination. First, as discussed in further detail below, the Kellys' failed to inform JAW that they had not obtained the required permits to perform work on two of the properties. (Dkt No. 73 at 96:15-29.)  Second, the record demonstrates the Kellys

knowingly omitted this material fact. Third, the Kellys performed this act with the intent and purpose of inducing JAW into entering the loan agreement because their knowledge of their financial state allows for an inference of fraudulent intent. See, e.g., In re Boydston, 520 F.2d 1098, 1101 (5th Cir.1975). Fourth, these were material facts. (Dkt No. 73 at 98:5-9.) Fifth, as a proximate result of the Appellants' misrepresentations, JAW sustained damages or loss by entering into a loan agreement, which it would not have entered into had it known the truth. (Id.)

### 1. *Ms. Kelly*

The Kellys contend the record contains insufficient evidence to support the Bankruptcy Court's inclusion of Ms. Kelly in its determination of nondischargeability for concealment. Specifically, the Kellys argue there is insufficient evidence of knowledge on the part of Ms. Kelly, such that JAW failed to meet its burden of proof with respect to her. The Kellys point out somewhat correctly, "The lower Court received NO evidence and made no finding of fact that Lori Kelly knew a permit was required for construction at the Boulevard or 4th Place or was involved in any communication relating to the concealment of such a fact." (Appellant's Reply Br. at 8.) While the Bankruptcy Court did not receive any direct evidence with respect to Ms. Kelly's knowledge, there is sufficient circumstantial evidence to infer knowledge. Accordingly, the record contains sufficient evidence to implicate Ms. Kelly and hold her liable for the concealment of work performed without permits.

The Kellys' debts are subject to California community property law, and "[e]xcept as otherwise expressly provided by statute, the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt." Cal. Fam. Code § 910. Thus, the community estate remains liable to third-party creditors for any debt arising out of a misuse of assets by one spouse. Lezine v. Sec. Pac. Fin., 14 Cal. 4th 56, 64 (1996) (citing Cal. Fam. Code §§ 1101, 2602). When such debts arise out of fraud,

however, "[a] marital union alone without a finding of a partnership or other agency relationship between spouses, cannot serve as a basis for imputing fraud from one spouse to the other." Tsurukawa, 258 B.R. at 198.  A spouse in a superior position to obtain relevant financial information may have a duty to disclose that information to the other spouse.  In re Marriage of Feldman, 153 Cal. App. 4th 1470, 1492 (2007).

Accordingly, in In re Lansford, 822 F.2d 902 (9th Cir. 1987), the Ninth Circuit concluded that, by virtue of her participation and involvement in a fraudulent transaction, a wife could be held culpable for that transaction, even where her husband actually prepared the fraudulent statement.  In Lansford, a husband and wife purchased a restaurant from a corporation pursuant to an agreement entered into after the husband had submitted a financial statement containing material misrepresentations about his financial condition.  Id. at 903.  After the couple filed for bankruptcy, the corporation sued to have the debt declared nondischargeable.  Id.  The Ninth Circuit concluded that, while the record contained sparse evidence with respect to the wife's liability, it did disclose sufficient evidence to support the trial court's findings of liability.  Id. at 905. That evidence included: (1) both spouses had a hand in initiating discussion with the corporation; (2) the wife discovered the possible venue for the restaurant; (3) the wife was a signatory on the financing arrangement of the real estate project that went into default, the status of which was misrepresented to the corporation; and (4) the wife signed the purchase documents, which also contained misrepresentations.  Id.  The court noted that, while the evidence was far from overwhelming, there is a general presumption in bankruptcy proceedings that issues not raised below will not be raised on appeal.  Id.  Thus, the couple could have called the variance of evidence as to the two spouse's to the trial court's attention, rather than hoping it would rule in favor of both of them.  Id.

Like the wife in Lansford, Ms. Kelly was involved in the fraudulent transaction at issue and similarly signed the documents containing the misrepresentations.  Also like the wife in Lansford, Ms. Kelly participated in her husband's business dealings by

serving as bookkeeper and performing various other administrative tasks. (Dkt No. 73 at 19:2-14.)  She testified that she even prepared documents used by Gillette in arranging the loan and understood that he was acting on both her and Mr. Kelly's behalf in arranging the loan.  (Id. at 21:1-25.)  Thus, while the record may be sparse and lacking in direct evidence with respect to Ms. Kelly's knowledge of whether the permits were obtained for the Boulevard and Duplex properties, and whether she knowingly concealed that fact, it contains sufficient circumstantial evidence and testimony to allow the inference that she participated in the concealment.  For instance, the record contains sufficient evidence to infer that Ms. Kelly knew of Mr. Kelly's criminal prosecution for violating a stop work order, which would have apprised her of the fact that her husband had been performing work on the properties without permits.  Thus, given Ms. Kelly's involvement in obtaining the loan at issue, the Court can reasonably infer that she, like Mr. Kelly, failed to relay such knowledge before signing the loan documents.  Lastly, as in Landsford, the Kellys should have contested the issue of Ms. Kelly's liability and involvement in the concealment in the Bankruptcy Court proceeding, rather than raising it on appeal.

The evidence supports the Bankruptcy Court's finding that she was significantly informed enough for the debt to be nondischargeable as to both her and her husband and to allow this Court to find an absence of clear error.

### 2. *Proximate Causation*

The Kellys argue the record lacks evidence of any diminution in value, loss, damage, injury, or obligation created as a result of the permit issue.  (Appellants' Opening Br. at 11.)  They contend that, because the Bankruptcy Court concluded that Gillette represented a major contributing factor to JAW's losses, the Kellys could not have contributed as well.  (Appellants' Reply Br. at 14:8-15.)  While the Bankruptcy Court did conclude that "[i]f Mr. Gillette had been accurate in his calculations, Mr. Williams would not have been permitted to make the loan in the first place as the loan-to-value ratios would have been far above what a prudent investor should lend on,"

(Dkt No. 80 at 23:16-20), it also decided that "the mere fact that Mr. Williams was ill-served by an incompetent agent does not permit Mr. Kelly to compound his injury by failing to disclose that at least two of the properties he had given to Mr. Williams as security had unpermitted construction, which might have affected the fair market value." (Id. at 23:20 - 25-24:1.)

The Kellys base their argument on the rule that an event is a proximate cause only if it results in an event or series of events, unbroken by an intervening cause, that produces an injury that would not have occurred but for the initial event. (Appellants' Opening Br. at 10:1-4; accord L. Barber Gems, Inc. v. Brink's Diamond & Jewelry North America, 43 Fed. Appx. 164, 165-66 (9th Cir. 2002) (applying California law).) The Kellys' argument that an intervening cause may preclude a finding of proximate causation, however, is irrelevant because Gillette's actions contributed as a concurrent cause, rather than an intervening cause.

An act is the proximate cause of a plaintiff's injury where it constitutes a substantial factor in brining about the plaintiff's harm. Banville v. Schmidt, 37 Cal. App. 3d 92, 108 (1974). However, the proximate cause need not be the sole cause of the plaintiff's harm. Pedeferri v. Seidner Enterprises, 216 Cal. App. 4th 359, 372-73 (2013); Ileto v. Glock Inc., 349 F.3d 1191, 1212 (9th Cir. 2003) (applying California law). If an act contributes as a substantial factor to a party's injury, a court may find proximate causation even though one or more concurrent causes also contributed to that injury. Agnew v. City of Los Angeles, 134 Cal. App. 2d 433, 439 (1955); see also Banville, 37 Cal. App. 3d at 108 (citing 38 Cal. L. Rev., pp. 379-380, William L. Prosser, Proximate Cause in California) ("In particular, the defendant never can be absolved from liability for the mere reason that the negligence of another has contributed to the result. . . .")). This is because the Restatement of Torts (Second) § 432's substantial factor test subsumes the "but for" test of causation cited by the Kellys. Viner v. Sweet, 30 Cal. 4th 1232, 1241 (2003) (citing Restatement § 432). Subsection (1) of § 432 adopts the "but for" test: "the actor's negligent conduct is not a substantial

factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent." Viner, 30 Cal. 4th at 1241 (citing Restatement § 432(1)).   Subsection (2) of § 432, however, allows for an exception addressing concurrent independent causes: "[i]f two forces are actively operating . . . and each of itself is sufficient to bring about harm to another, the actor's negligence may be found to be a substantial factor in bringing it about." Viner, 30 Cal. 4th at 1241 (citing Restatement § 432(2)).

Because Gillette's conduct constitutes a concurrent, or contributing factor to JAW's harm, rather than an intervening cause, the Kellys may still be found liable. Further, JAW accurately points out that the Kellys' arguments miss the mark: whether or not the Kellys' concealment of their illegal construction work damaged the financial value of the properties used to secure the loan is irrelevant.   It is undisputed that the Kellys did not repay the loan.   As a result, the Bankruptcy Court appropriately found JAW's financial loss represented the damage to JAW and that the Kellys proximately caused this damage by causing JAW to enter into a loan agreement it would not have entered into had it known the facts that the Kellys concealed.

The Bankruptcy Court's conclusion that the Kellys proximately caused JAW's damage was not clearly erroneous.

### 3.   *The Boulevard Property*

The Kellys remodeled the Boulevard Property by converting it from a motel into apartments and by changing its carports into second bedrooms. (Dkt No. 80 at 15: 20-23.)   In November 2007, the City of Escondido issued a stop-work notice to the Kellys.   (Id. at 16:1-2; ROA, Dkt No. 5-2 at 43.)   Mr. Kelly was in the process of remedying the problems raised in the notice but never completed the work because JAW foreclosed on the property. (Id. at 16:2-5.) Mr. Kelly admitted the work done on the Boulevard Property required a permit, (Dkt No. 72 at 138:8-11), and the Kellys even state, "There is no question that at some point in time the work was done without permits." (Appellants' Reply Br. at 12.)

Rather than arguing that either a permit was not required for the work performed, or admitting that a permit was required but asserting JAW knew the Kellys performed work without a required permit, the Kellys argue their failure to disclose work performed without a permit did not cause JAW damages or loss, and that the issues relating to their lack of a permit had been resolved by the time they entered into the loan agreement with JAW.  These arguments are unpersuasive.

First, the harm arising from the Kellys' omission need not arise directly from their failure to comply with permit requirements; rather, JAW needed only to demonstrate that the Kellys' failure to disclose the work without required permits caused JAW some harm.  In this case, the harm was JAW's financial loss caused by entering into an agreement with untrustworthy/unreliable people.  As previously discussed, the Kellys proximately caused this harm by failing to disclose material facts.  Second, contrary to the Kellys' assertion, the record demonstrates the Kellys never resolved the permit issue.  (Dkt No. 72 at 144:4-18.)  In fact, Mr. Kelly testified that, by September 2008, he had not resolved all of the permit issues with the City, (Dkt No. 72 at 140:1-13; 144:4-18; 145:11-18; see also, ROA, Dkt No. 5-2 at 56-58), and he had even had a misdemeanor criminal case filed against him for the work he had done at the Boulevard Property.  (Dkt No. 72 at 144:19-25; see also, ROA, Dkt No. 5-2 at 59-61.)  Further, after JAW foreclosed on the properties, it had to obtain permits on the Boulevard Property to rezone it. (Dkt No. 73 at 110: 23 - 111:10.)   Thus, the permit issue at the Boulevard Property clearly remained in 2008.

4. *The Duplex*

The Bankruptcy Court made two specific findings regarding the permit for the Duplex.  First, it determined that Mr. Kelly added the half-bathroom to the Duplex without a permit.  (Dkt No. 80 at 16:9-11.)  Second, it found that Mr. Kelly admitted a permit might have been required.  (Dkt No. 72 at 146:24-25.)  In fact, Mr. Kelly admitted in his deposition, which JAW used to impeach him at trial, that a permit was needed to add a half-bathroom to the property.  (Id. at 147:1-11.)  Third, the Kellys

never disclosed to JAW that such work was performed on the security property without the requisite permits. (Dkt No. 73 at 96:20-25 - 97:1-6.) As a result, it is clear that, in fact, a permit was needed to add the half-bathroom, and that JAW satisfied its burden of proof as to both the requirement of a permit for the property as well as the Kellys' failure to disclose their performance of work on the Duplex without the required permits.

**C.** **The Bankruptcy Court's Judgment is Barred by Neither the Merger Doctrine Nor California's Antideficiency Statute.**

On appeal, the Kellys assert that both the doctrine of merger as well as California's antideficiency statute bar the Bankruptcy Court's judgment because they preclude a finding of proximate causation of JAW's harm as well as a finding of harm or loss. (Appellants' Reply Br. at 16:4-11.) The Kellys argue that JAW's junior-position deeds of trust on the Palms Property and the Church Property merged with JAW's senior deeds of trust when JAW foreclosed on its second-position deeds of trust on those properties, and that JAW's foreclosure on those properties estopps JAW from pursuing any amounts owed by the Kellys because JAW's security was eliminated through foreclosure. (Id. at 15:18-27-16:1-11.) That is, the foreclosures satisfied any remaining debt.

First, the Kellys cannot raise this issue for the first time in their reply brief. United States v. Home, 265 F. App'x 631, 633 (9th Cir. 2008) (quoting Bazuaye v. INS, 79 F.3d 118, 120 (9th Cir.1996) ("Issues raised for the first time in the reply brief are waived."); see also In re Riverside-Linden Investment, Co. (Boldt v. Crake), 945 F.2d 320, 324-25 (9th Cir.1991) (the court "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief"); Fed.R.App.P. 28(a)(2) (appellant's brief shall contain a "statement of the issues

1  presented for review"). As a result, Appellants waived this issue.[7]

2  **V.      CONCLUSION & ORDER**

3       The Court finds no clear error in the Bankruptcy Court's finding that the debt

4  owed by the Kellys to JAW was nondischargeable in their Chapter 7 bankruptcy

5  proceeding because it was procured by fraud.  Because this finding is supported by

6  substantial evidence in the record, this Court affirms the Bankruptcy Court's judgment.

7       The Court, however, modifies the judgment to be in the amount of $652,337.96,

8  rather than $652,327.96, having noticed a typographical error in the Trial Exhibit relied

9  upon by the Bankruptcy Court when calculating the amount of the judgment.[8]

10      The decision of the Bankruptcy Court is **AFFIRMED AS MODIFIED**.

11      **IT IS SO ORDERED.**

12

13  DATED:  September 17, 2013

14

15

16      HON. GONZALO P. CURIEL

17      United States District Judge

18  _____

19      [7]  Even if the Kellys did not waive the issue, neither the merger doctrine nor California's anti-
deficiency statutes apply to actions based upon fraud.  Kolodge v. Boyd, 88 Cal. App. 4th 349, 369
20  (2001); accord Evans v. California Trailer Court, Inc., 28 Cal. App. 4the 540, 552-55 (1994); Cal.
Code Civ. P. § 726(f)-(h); see also Franklin v. Commonwealth Fin. Corp. (In re Franklin), 922 F.2d
21  536, 539 (9th Cir.1991) (quoting Glendale Fed. Sav. and Loan Ass'n v. Marina View Heights Dev.
Co., Inc., 66 Cal.App.3d 101, 139 (1977) ("The statutes only proscribe deficiency judgments; an action
for damages for fraud is not one for a deficiency judgment")); Alliance Mortgage Co. v. Rothwell
22  (1995) 10 Cal.4th 1226 (holding that antideficiency statutes do not preclude an action against the
borrower for fraud in the inducement of the loan).

23

24      [8]  Pursuant to Trial Exhibit 68 (the "Exhibit") in the Adversary Proceeding, (ROA, Dkt No. 5-4
at 27-28), which the Bankruptcy Court cited in its Judgment, (ROA, Dkt No. 5-1 at 101, 109, 114,
25  122), the total of all of the amounts listed in the "Accrued Interest" column equals $136,998.47, *not*
$136,988.47, as listed in the Exhibit.  Further, because Gillette, the creator of the Exhibit, used that
26  figure in calculating the total amount of unpaid principal, bonus, and interest as of July 8, 2011, he also
erroneously listed that as $606,464.05.  Thus, the Bankruptcy Court, having relied upon the Exhibit
27  containing these erroneous totals, entered judgment in the amount of $652,327.96, stating JAW should
recover "the total sum of $652,327.96 (consisting of the amount due as of July 8, 2011 per Trial
28  Exhibit 68 of $606,464.05, plus interest to February 6, 2012 of $45,863.91)." (Id.)  Accepting all other
numbers used by the Bankruptcy Court, this Court notes the judgment entered should have been
$652,337.96, and not $652,327.96.